IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DAVID NEAL,**

**Petitioner,**

**vs.**                                                                 **Civ. No. 06-1211 BB/WDS**

**ROBERT ULIBARRI,**

**Respondents**

## MAGISTRATE JUDGE'S PROPOSED
## FINDINGS AND RECOMMENDED DISPOSITION[1]

This is a Petition For a Writ of Habeas Corpus filed under 28 U.S.C. § 2254 by David Neal. Neal is acting *pro se*. Respondent has filed an Answer and Motion to Dismiss in opposition to the Petition. Petitioner has filed a traverse in opposition to the Motion to Dismiss. The Court has read and considered all of the pleadings and evidence submitted by Petitioner. The United States Magistrate Judge, having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, finds and recommends that the Respondent's Motion to Dismiss With Prejudice be granted. The Court makes the following findings and recommended disposition.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2004 Petitioner and his brother, Joey, met up with James Ortiz and Alicia Garcia. Petitioner, Joey, James and Alicia drove to Josh Lanear's home. Justin Sweeney was also present at Mr. Lanear's home. The testimony at trial was conflicting in many respects, but

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Petitioner, Joey and James ended up inside the residence, while Alicia remained in the car, a silver Saturn. Justin Sweeney testified that James Ortiz told him to get in the car, tried to hit him with a hammer, and held his other hand in his pocket as though he had a gun. James Ortiz testified that Petitioner had the gun, trying to get Justin out of the house. Justin testified that James threatened to shoot him if he did not get in the silver Saturn and drive it to James' house.

Justin, James, Joey and Alicia ended up in the silver Saturn, with Justin driving. David Neal left the Lanear residence in a different vehicle. Justin stated that he started driving the Saturn, "floored it," and then jumped out while the car was moving. He ran past a neighbor, shouting for help, returned to Josh's residence, and called 911. The local police stopped the silver Saturn, inside of which they found James, Joey, Alicia and a gun. The gun was traced to Petitioner's wife.

Petitioner was charged with conspiracy to kidnap and kidnapping. He was convicted of the former and acquitted of the latter. Petitioner's conviction was affirmed on appeal. His state habeas petition was denied.

## CLAIMS

Petitioner seeks relief on the following grounds: 1) There was insufficient evidence to convict him of conspiracy to commit kidnapping; 2) Ineffective assistance of counsel, in that his attorney did not expose as perjury certain testimony by Mr. Ortiz, allowed witnesses to testify in their prison uniforms, and allowed Petitioner to testify under the influence of prescribed narcotic pain medication; 3) Violation of due process in that there was no original jury verdict in the appellate record; 4) Error in the jury instructions; and 5) Prosecutorial misconduct.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes the requirements for granting a writ of habeas corpus:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim --
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error. See *Maynard v. Boone*, 468 F.3d 665 (10th Cir. 2006).

**A. Section 2254(d)(1)**

    1. Clearly established law

The AEDPA "requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 380, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Whether the law is clearly established is the threshold question under § 2254(d)(1). Id. at 390; see also *Yarborough v. Alvarado*, 541 U.S. 652, 660, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (the analysis "begin[s] by determining the relevant clearly established law").  Clearly established law is determined by the United States Supreme Court, and refers to the Court's "holdings, as opposed to the dicta." *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 412). The law is not clearly established if it announces "[a] rule that 'breaks new ground or imposes a new obligation on the States of the Federal Government.'" *Williams* at 381 (quoting *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)). Supreme Court holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings, i.e., with facts that are at least closely-related or similar to the case sub judice. *Carey v. Musladin*, 549 U.S. 70,

127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).  See also *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007), ("[*Musladin*] admonishe[d] courts to read the Supreme Court's holdings narrowly and to disregard as dicta . . . much of the underlying logic and rationale of the high court's decisions."), *cert. denied*, 170 L. Ed. 2d 362 (U.S. 2008).

Without clearly established federal law, a federal habeas court need not consider whether a state court's decision was "contrary to" or involved an "unreasonable application" of such law. The threshold determination that there is no clearly established federal law is analytically dispositive in the § 2254(d)(1) analysis.  *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

2. Contrary to or unreasonable application of clearly established federal law

If the threshold question as to the existence of clearly established federal law is answered affirmatively, the Court must then consider whether the state court decision is either contrary to or an unreasonable application of such law.  A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard*, 468 F.3d at 669 (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

**B. Section 2254(d)(2)**

Under 28 U.S.C. § 2254(d)(2) a writ of habeas corpus should be granted only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  A federal habeas court must presume the state court's factual

findings to be correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard "is demanding, but not insatiable . . . [as ] deference does not by definition preclude relief." *Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005)(internal quotation marks omitted) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)).

## ANALYSIS

### 1. Insufficient Evidence to Convict

Petitioner first alleges that there was insufficient evidence to support his conviction for conspiracy to commit kidnapping. The traditional standard of review for a sufficiency of the evidence claim, as enunciated by the Supreme Court, is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *Valdez v. Bravo*, 373 F.3d 1093 (10th Cir. 2004). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. A review under *Jackson* is "sharply limited." *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996).

*Jackson*, of course, was decided before implementation of the AEDPA. The AEDPA was passed in 1996, and some courts have suggested that Jackson was superceded by the AEDPA. *See*, *Hurtado v. Tucker*, 90 F. Supp. 2d 118, 1998 U.S. Dist. LEXIS 22800 (D. Mass. 1998); *Starr v. Mitchell*, 2000 U.S. App. LEXIS 25646 (6th Cir. 2000); *Jackson v. Washington*, 1999 U.S. Dist. LEXIS 13299 (N.D. Ill. 1999); *United States ex rel. Roman v. Washington*, 1996 U.S. Dist. LEXIS 14106 (N.D. Ill. 1996).

Under 28 U.S.C. § 2254(d)(2) a writ of habeas corpus should be granted only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For a sufficiency of the evidence claim, *Jackson* instructs the habeas court to find for the petitioner if the guilty verdict was "irrational." The AEDPA instructs the habeas court to find for the petitioner if the guilty verdict was "unreasonable." The Court sees little, if any, difference between the two standards. Furthermore, the AEDPA requires that a habeas court show deference to state court findings, a standard which is not inconsistent with the "sharply limited" review under *Jackson*.

The Court finds that the state court guilty verdict passes muster under either the *Jackson* or § 2254(d)(2) standard. To convict a defendant of conspiracy to commit kidnapping in New Mexico the prosecutor must prove that the defendant and another person by words or acts agreed together to commit kidnapping, and that the defendant and the other person intended to commit kidnapping, with kidnapping being defined as taking, transporting, restraining or confining a person by force or intimidation. (RP 231-233) The record indicates that the Petitioner, his brother Joey, and James Ortiz were together talking at a gas station just before the incident with Justin Sweeney. (RP 260) The three men, along with Alicia Garcia, drove in separate cars to Josh Lanear's house. (RP 260-61).

James Ortiz testified that Petitioner went into Lanear's trailer, and then called for him to come inside. (RP 261) Ortiz testified that Petitioner talked to Sweeney about drugs (RP 262), that Petitioner had a weapon (RP 261), and that Petitioner asked him to help him get Sweeney out of the house. (RP 261) Sweeney testified that Ortiz told him to get in the car, tried to hit him with a hammer, and held his hand in his pocket as though he had a gun. (RP 256) Alicia Garcia testified that James Ortiz and David and Joey Neal went into the trailer for ten minutes and came out with

6

Justin Sweeney. (RP 266) Sweeney testified that Ortiz threatened to shoot him if he didn't get in Ortiz' car and drive (RP 256) and threatened him again once he was in the car. (RP 256) After Sweeney escaped and called 911, the police stopped Ortiz' car and found a gun in it that was traced back to Petitioner's wife. (RP 255)

Viewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have concluded that Justin Sweeney was kidnapped, and that Petitioner, his brother, and James Ortiz had agreed, by words or acts, to commit the kidnapping and that they intended to kidnap Justin Sweeney. Petitioner's argument in this regard is not well taken.

**2. Ineffective assistance of counsel**

Petitioner next alleges ineffective assistance of counsel in that his attorney did not expose as perjury certain testimony by Mr. Ortiz, allowed witnesses to testify in their prison uniforms, and allowed Petitioner to testify under the influence of prescribed narcotic pain medication. There is clearly established federal law regarding ineffective assistance of counsel claims. The merits of an ineffective counsel claim are squarely governed by *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

In *Strickland*, 466 U.S. at 686-87, the Supreme Court devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. In order to establish an ineffective assistance claim, the petitioner must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [his] defense." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000). To establish deficient performance, Petitioner must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000),

quoting *Strickland*, 466 U.S. at 687; and that his legal "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

The prejudice component focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393, FN17, citing *Strickland* 466 U.S. at 687, and *Kimmelman v. Morrison*, 477 U.S. 365, 374, 393, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986); see also *Lockhart v. Fretwell*, 506 U.S. 364, 369, 122 L. Ed. 2d 180, 113 S. Ct. 838 (1993).  It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course.  *E.g. Scoggin v. Kaiser*, 186 F.3d 1203, 1207 (10th Cir. 1999).

The state court rejected Petitioner's claim that he received ineffective assistance of counsel. This Court must evaluate whether, by so doing, the state (1) acted contrary to or (2) unreasonably applied this clearly established federal law.

First, Petitioner alleges that his attorney failed to expose the allegedly perjured testimony of James Ortiz.  Petitioner does not specify the alleged perjured testimony in his petition.  In deference to Petitioner's *pro se* status, however, the Court has attempted to identify the alleged perjury.  It appears to the Court that at trial on November 18, 2004 the prosecutor called Mr. Ortiz as a witness and asked him if he had been promised anything for his testimony.  Mr. Ortiz replied that he had not been promised anything. (R. P. p. 262)  Petitioner claims that this was not true, and that the testimony constituted perjury and that his attorney should have objected to the testimony or exposed it as false testimony.

Petitioner's argument fails because he has not presented any evidence that the testimony was, in fact, false. In his state habeas petition Petitioner included a Plea and Disposition Agreement between the State and James Ortiz, Jr. (R.P. p. 375) Mr. Ortiz pled no contest to one count of conspiracy to commit kidnapping, with sentencing at the discretion of the Court. The agreement is dated February 7, 2006, over one year after Petitioner's trial. There is simply no evidence before the Court that Mr. Ortiz had been promised anything for his testimony on November 18, 2004 at the trial of Petitioner. Accordingly, there is no factual basis upon which the Court could find Petitioner's defense counsel's performance deficient for failing to prevent the above referenced testimony, and the State's failure to grant relief was not an unreasonable application of clearly established federal law.

Second, Petitioner alleges that his defense counsel was ineffective for allowing "defense witnesses" to testify in jail uniforms. Again, the Court notes that Petitioner has not identified which witnesses testified in jail uniforms, nor can the Court determine this fact from the record proper. Additionally, the Court notes that, other than the law enforcement officers who testified at trial, every, or nearly every, witness who testified during trial had a substantial criminal record, including Petitioner. The Court can identify no basis upon which it could conclude that the outcome of the trial would have been different had the witnesses who testified in jail uniforms, whoever they were, testified in civilian clothing. The State's failure to grant relief was not an unreasonable application of clearly established federal law

Finally, Petitioner alleges that his defense counsel was ineffective for allowing him to testify under the influence of prescribed narcotic pain medication. Petitioner has not identified the pain medication or the dose he had taken on the day he testified. Petitioner has included no medical records documenting his injury or alleged pain. The Court listened to the tape recording of

9

Petitioner's testimony that was contained in the Record Proper. There was no perceivable impairment, i.e. slurred speech, disjointed thinking, that could be detected by listening to the tape. Petitioner has not suggested that he asked his attorney to delay the trial due to his medical condition, and there is no evidence before the Court that defense counsel should have realized that Petitioner was unable to testify effectively. Accordingly, the Court has no basis to conclude that defense counsel was ineffective.

Furthermore, Petitioner has not identified any testimony that he believes he should not have given, nor has he identified any testimony that he could have offered, but did not, because of his alleged medicated state. Petitioner alleges that the medication "rendered [him] useless" at trial, but does not explain how he was useless or how he could have been more effective as a witness. Again, the Court can identify no basis upon which it could conclude that the outcome of the trial would have been different had it been delayed to accommodate his alleged medical condition, and Petitioner's argument fails Strickland's prejudice test, as well, and the State's failure to grant relief was not an unreasonable application of clearly established federal law.

### 3. Alleged Incomplete Court Record

Petitioner next alleges that he was deprived of his due process rights because the court record at some point was missing 53 pages, including the original jury verdict. While the Court can imagine circumstances where an appellate ruling based on an incomplete appellate record, for example, could constitute a due process violation contrary to clearly established federal law, this case does not present such circumstances. Apparently, the trial court record was copied and transmitted intact to the state appellate court. However, not all of the original trial record was returned to the file. When Petitioner later filed his state habeas petition the trial court realized that 53 pages were missing from its file, and requested copies of those pages from the appellate court.

The appellate court provided the copies, and the Court notes that the record proper provided in this matter is complete.  The trial court's denial of Petitioner's state habeas petition was based on a complete record, and Petitioner was not deprived of any fundamental right guaranteed by the Constitution. *Brinlee v. Crisp*, 608 F. 2d 839, 843 (10th Cir. 1979)   This is not a matter that is appropriate for federal review under the AEDPA.  Accordingly, Petitioner's argument is not well taken.

**4.  Alleged Error in the Jury Instructions.**

Petitioner alleges that the jury instructions regarding kidnapping were erroneous, in that they did not ask the jury to first determine whether the kidnapping was first or second degree.  New Mexico law establishes that all kidnapping is first degree, unless the kidnapper both: 1) releases the victim and 2) does not commit serious bodily harm to the victim.  UJI 14-403; 14-1618.  The evidence in this case was uncontroverted that Mr. Sweeney was not released.  Instead, he escaped from his captors by bailing out of a moving car and running away.  There was no factual basis for a jury instruction regarding second degree kidnapping, and Petitioner's argument is not well taken.

**5. Prosecutorial misconduct.**

Finally, Petitioner alleges prosecutorial misconduct in the testimony of Mr. Ortiz that he was not offered anything in exchange for his testimony.  Again, it is possible for a question regarding prosecutorial conduct to implicate clearly established federal law, but this is not one of them.  For the reasons set forth above, there is no evidence before the court of any perjured testimony or prosecutorial misconduct.  Petitioner's argument on this issue is not well taken.

11

## RECOMMENDED DISPOSITION

The Court recommends that David Neal's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 be DISMISSED with prejudice.

_____
W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE